# In the United States Court of Federal Claims

No. 14-502C
(Filed Under Seal: September 9, 2014)
(Released For Publication: September 19, 2014)

*************************************

|  |  |  |
|---|---|---|
| **ROTECH HEALTHCARE INC.,** | * | Nonmanufacturer Rule, 15 U.S.C. § |
|  | * | 637(a)(17), Bid protest, Injunctive |
| Plaintiff, | * | relief, NAICS code determination |
|  | * |  |
| v. | * |  |
|  | * |  |
| **THE UNITED STATES,** | * |  |
|  | * |  |
| Defendant. | * |  |
|  | * |  |

*************************************

Kyle R. Jefcoat, Latham & Watkins, LLP, Washington, D.C., for Plaintiff.

Matthew J. Andrade, United States Department of Justice, Washington, D.C., for Defendant.

## ORDER AND OPINION

**DAMICH**, Senior Judge:

This pre-award bid protest was filed by Plaintiff, Rotech Healthcare Inc. ("Rotech") on June 11, 2014, challenging the Veterans Administration's ("VA") decision to issue Solicitation No. VA259-14-R-0107 in its current form because the solicitation fails to consider the application of various statutes and regulations. Before the Court are Cross-Motions for Judgment on the Administrative Record. For the reasons set forth below, Rotech's Motion for Judgment on the Administrative Record is GRANTED, and the Government's Cross-Motion is DENIED.

## I. Background

### a. Factual background

Rotech is a privately-held company incorporated under Delaware law with its principal offices located in Orlando, Florida. Compl. at 7. Rotech is an industry leader in the supply of home medical equipment and has operating centers around the country and specializes in the supply of respiratory products. *Id.* Rotech has a long-standing relationship with providing supplies and services to the United States Government, having entered into contracts with the

VA for the past 16 years and having been a supplier for Medicare and Medicaid programs for even longer. *Id.* at 8.

At issue in the case is the VA's Solicitation No. VA259-14-R-0107, issued on March 31, 2014. Compl. at 1. The Solicitation calls for the provision of home oxygen supplies and services to veterans and beneficiaries located in the Veterans Integrated Services Network ("VISN") 19. *Id.* VISN 19 covers, in part or in whole, the states of Montana, Colorado, Utah, Nebraska, Kansas, Idaho, Nevada, and North Dakota. *Id.* In addition to holding multiple other contracts with the government for the procurement of home oxygen supplies, Rotech is the incumbent provider of home oxygen supplies and services for the VA in VISN 19. *Id.* at 8. The Solicitation states specifically that "the contractor must 'furnish, install and service oxygen equipment to dispense oxygen and supplies.'" *Id.* at 18. The equipment to be procured by the contractor includes a wide variety of items, including stationary and portable oxygen systems, valves, medically compressed air, cylinders and containers, compressors, portable suction machines, ventilators, and consumable supplies such as humidifiers, distilled water, oxygen tubing, face masks, circuits, and related safety devices. *Id.* These products are all listed as part of the contract, along with services, as Contract Line Item Numbers ("CLINs"). *Id.* at 19.

The current Solicitation was offered as a 100 percent small business set-aside and issued with a North American Industry Classification System ("NAICS") code of 532291, titled "Home Health Equipment Rental." *Id.* at 21.[1] Rotech is admittedly not a small business concern under the issued NAICS code (or likely any other code) and thus is not eligible to submit a bid on the Solicitation. *Id.* at 9.

### b. Procedural background

On April 7, 2014, Rotech filed a timely appeal of the Solicitation to the Small Business Administration – Office of Hearings & Appeals ("OHA"). Def.'s Mot. J. Admin. R. at 10. Rotech specifically challenged the use of NAICS code 532291 and asked that the VA reissue the Solicitation under a different code. *Id.* The OHA dismissed the appeal noting that "in order to have standing to bring a NAICS code appeal, the aggrieved party 'must show that it is a potential bidder or offeror on a small business set aside.'" *Id.* at 11. Since Rotech is admittedly not a small business concern, it could not have submitted a bid on the Solicitation, and thus was not a potential bidder or offeror.

On April 25, 2014, Rotech filed a timely agency-level protest, again arguing that the Solicitation was issued under the wrong code number, and also noting that the Solicitation contained errors because it did not require potential bidders to provide enough information in order for the VA to determine compliance with the Limitation on Subcontracting ("LOS") rules and the statutory Nonmanufacturer Rule ("NMR"). *Id.* Rotech's protest was denied on June 3, with the Contracting Officer ("CO") noting that the NMR was not applicable to the Solicitation because as designated by the NAICS code, the Solicitation was for services and not supplies. *Id.*

---

[1] Solicitations offered as small business set-asides are governed by regulations promulgated by the Small Business Adminsitration ("SBA"). Small business set-asides exist in order to ensure that a certain percentage of government contracts are available for small business concerns. Whether a business exceeds the maximum threshold for earnings or employees for small business set-aside qualification depends on the NAICS code, discussed *infra*.

The CO also noted that challenges to a NAICS code were "not within the purview of an agency protest" and that they are "for review solely by the Small Business Administration." *Id.*

Having exhausted all of its administrative remedies, Rotech filed its Complaint in this Court on June 11, 2014. The Plaintiff's complaint contains four separate counts. The first count is that the VA failed to issue the Solicitation in compliance with two LOS rules regarding the source of supplies and the use of subcontractors.[2] The second count is that the VA failed to issue the Solicitation in compliance with the statutory nonmanufacturer rule, which requires that a business concern "represent that it will supply the product of a domestic small business manufacturer" unless a waiver is granted.[3] Compl. at 101-102. The third count is that the VA failed to require sufficient information to support a small-business set-aside.[4] The fourth and final count is that the VA failed to issue the Solicitation under the proper NAICS code.[5] Compl. at 115.

As relief, Rotech seeks "[a]n injunction requiring the VA to amend the Solicitation to either bring it into compliance with [the various statutes and regulations cited in the complaint]; or reissue the Solicitation without a small business set-aside such that the Solicitation is subject to full and open competition." Compl. Section V. Additionally, Rotech seeks an injunction "requiring the VA to take other corrective action as appropriate," a "declaratory judgment that the VA's Solicitation is arbitrary, capricious, or contrary to law," and/or the award of attorney's fees and costs. *Id.*

Rotech filed its Motion for Judgment on the Administrative Record on July 11, 2014. On July 25, 2014, the Government filed its Cross Motion for Judgment on the Administrative Record and Response. Rotech filed its Reply and Response on August 6, 2014, and the government filed its Reply on August 8, 2014. The Cross-Motions for Judgment on the Administrative Record are now before this court.

---

[2] 15 U.S.C. § 657s(a)(4) and 15 U.S.C. § 657s(a)(3). Compl. at 94-95. The former statute provides that when a small business set-aside requires supplies, the chosen small business concern must supply the product of a domestic small business manufacturer, while the latter statute states that a small business concern cannot spend more than 50% of the amount awarded under the contract on subcontractors. *Id.* Rotech avers that by failing to include in the Solicitation specifications requiring compliance with these statutes, the VA will be unable to properly evaluate whether any of received proposals is acceptable under the law. *Id.* at 97.

[3] 15 U.S.C. § 637(a)(17)(B)(iv) (the NMR) and 13 C.F.R. § 121.406(b)(1). Similar to the first count, Rotech avers that by failing to consider the NMR when reviewing offers, the VA will be unable to properly evaluate whether proposals will be in compliance, and thus be in violation, with the NMR requirements. *Id.* at 104.

[4] FAR 19.502-2(b)(1) provides that before a Solicitation can be offered as a total small business set-aside, two separate determinations must be made: (1) that at least two responsible small business concerns can reasonably be expected to submit proposals; and (2) that those concerns must be offering the products of different small business manufacturers. Compl. at 108. By failing to include this FAR provision in the Solicitation, Rotech contends that the VA will be unable to recognize that the two factors are unlikely to be met by any potential bidders, thus making the Solicitation inappropriate for a small business set-aside. *Id.* at 110.

[5] The Solicitation was issued under NAICS code 532291 (Home Health Equipment Rental), which Rotech believes to be an improper code in violation of 13 CFR § 121.402(b), requiring a NAICS code to be one which describes the principle purpose of the product or service being acquired. *Id.* at 114. Instead, Rotech believes the proper code is 339112 (Surgical and Medical Instrument Manufacturing). *Id.* at 116. Rotech claims it has been prejudiced by this error because it will prevent the VA from properly determining that a set-aside is inappropriate for this particular Solicitation. *Id.*

## II.     Standard of Review

This Court's bid protest jurisdiction is provided by the Tucker Act. 28 U.S.C. § 1491(b) (2012). The Tucker Act provides that, in a bid protest action, the Court reviews an agency's procurement actions under the standards set forth in the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 (2006).  28 U.S.C. § 1491(b)(4); *see Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed. Cir. 2001).  Under the APA, the Court determines, based on a review of the record, whether the agency's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "[A] bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or, (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Demonico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

The question before a court faced with a motion for judgment upon the administrative record is whether, based upon both the disputed and undisputed facts in the administrative record ("AR"), the plaintiff has met its burden of proof that the agency failed to follow proper procedures or comply with the Federal Acquisition Regulations ("FAR").  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  Such a ruling is based upon the evidence contained within the AR as produced by the agency.  In essence, this analysis amounts to an expedited trial upon a paper record, and the court is required to make factual findings based upon the AR.  *Id.* at 1356.  That said, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute  its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Ala. Aircraft Indus., Inc. — Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009).  Where the parties have filed cross-motions for judgment on the administrative record, as here, Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum,* 404 F.3d at 1356.  Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record.  *See id.* at 1355-56. Questions of fact are resolved by reference to the administrative record.  *Id.* at 1356.

The next step is for the Court to determine if the plaintiff is prejudiced.  If the Court does so, the Court then addresses whether injunctive relief is warranted.  For injunctive relief, in addition to determining the plaintiff's success on the merits, the court weighs the plaintiff's irreparable harm if the court withholds such relief, the balance of hardships to the respective parties, and the public interest in granting injunctive relief.  *Centech Group, Inc. v. United States,* 554 F.3d 1029, 1037 (Fed. Cir. 2009).

## III.    Discussion

    **a.   The Statutory Nonmanufacturer Rule applies to the Solicitation regardless of the NAICS code because it calls for the provision of supplies.**

Central to this case is whether the NMR applies to the instant Solicitation.  Rotech believes that the current Solicitation will lead to a situation where the winning bidder or bidders are in violation of the NMR because they will be unable to provide the product of a domestic small business.  The Government argues that the NMR is inapplicable in this case because the NMR only applies to contracts for supplies and that the instant Solicitation, by virtue of its chosen NAICS code 532291, is a contract for services.  Def.'s Mot. J. Admin. R. at 29.  The statutory nonmanufacturer rule, 15 U.S.C. § 637(a)(17), is part of the Small Business Act, and the provision that is pertinent to this dispute allows a small business to bid on a contract even though it will not itself supply the product to be procured as long as it "represent[s] that it will supply the product of a domestic small business manufacturer or processor, unless a waiver of such requirement is granted."  15 U.S.C. § 637(a)(17).  "The clear purpose of the non-manufacturer rule is 'to prevent brokerage-type arrangements whereby small "front" organizations are set up to bid [on] government contracts but furnish the supplies of a large concern.'  The rules serves, in other words, 'to prevent dealers from acting as mere conduits for the products of large manufacturers on small business set-aside procurements.'"  *Rotech v. United States*, 71 Fed. Cl. 393, 412 (Fed. Cl. 2006).

Although NAICS code 532291 is titled "Home Health Equipment Rental," the parties are in agreement that the structure of the NAICS code system places this code under the category of services. Status Conference September 4, 2014.  Rotech, however, believes that because the procurement calls for the provision of health equipment, it is also a contract for the supply of products (regardless of the NAICS code), making the contract subject to the NMR.

Whether the NMR applies to a contract that includes both services and the provision of supplies, despite the NAICS code classification of the contract as one for services, has previously been considered by the Court of Federal Claims in a nearly identical controversy to the one now before this Court.  In *Rotech v. United States*, 71 Fed. Cl. 393 (Fed. Cl. 2006), the court considered the applicability of the NMR to a service contract that also involved the procurement of home oxygen supplies.  At the onset, it is important to acknowledge that the Government is correct in stating that "the court's decision in *Rotech* is not precedential . . . ."  Def.'s Mot. J. Admin. R. at 33.  Nevertheless, the *Rotech* decision may be cited as persuasive authority by this Court, as conceded by the Government ("the *Rotech* decision is at best persuasive.")  Def.'s Reply at 12.  Indeed, for the reasons discussed *infra*, this Court finds the 2006 *Rotech* decision to be articulate, thoughtful, and well-reasoned such that there is no reason for this Court to reach a different conclusion on such a similar set of facts.

*Rotech* concerned a pre-award bid protest by the plaintiff Rotech[6] challenging the award of home oxygen equipment contracts to two competitor companies by the VA.  *Rotech*, 71 Fed. Cl. at 395.  At issue were two separate Request for Proposals ("RFP"):  RFP 583, which concerned the provision of home oxygen equipment for Veterans Integrated Service Network 11 and issued under the same NAICS code as in this case, namely, 532291 ("Home Health Equipment Rental"), *id.*, and RFP 247, a similar but smaller contract for the supply of home oxygen equipment to beneficiaries in and around Augusta, Georgia and issued under NAICS code 621610, a service code titled "Home Health Care Services," *id.* at 399.  As is the case in the instant case, both RFPs were issued as small business set-asides, although the two RFPs in

---

[6] The plaintiff in *Rotech* is the same entity that is the plaintiff in the instant case.

*Rotech* each featured a cascading tier system[7] which allowed for the possibility of full and open competition should certain criteria not be met during the bidding process. The plaintiff argued that the VA's decision to award the RFPs as small business set-asides was arbitrary and capricious because although the winning bidders were both small businesses, they intended to fulfill their contracts by supplying the product of a large business, in violation of the NMR. *Id.* at 395. The VA contended that the NMR was inapplicable to those RFP's because the rule "applies only to contracts for the supply of manufactured products alone, and not to contracts like these, which call for the supply of both manufactured products and services." *Id.* at 411.

In holding that the NMR applies to service-coded contracts that also involved the provision of supplies, the *Rotech* court looked at the plain statutory language of the statutory nonmanufacturer rule, focusing on the word "any." ("An otherwise responsible business concern that is in compliance with the requirements of subparagraph (B) shall not be denied the opportunity to submit and have considered its offer for *any* procurement contract for the supply of a product . . . ."). 15 U.S.C. § 637(a)(17)(A) (emphasis added). The *Rotech* Court noted that its "first task is to determine whether Congress has spoken on the precise issue contested by the parties, by examining the text of the statutory nonmanufacturer rule." 71 Fed. Cl. at 418. In interpreting the text of the NMR, the court held that:

> The court cannot, however, ignore Congress' clear choice of the word "*any*" as the only adjective describing the phrase "procurement contract for the supply of a product." 15 U.S.C. § 637(a)(17)(A) (emphasis added). By opting not to use further modifying terms, such as "primarily," "principally," or "entirely," Congress declined to limit, in any way, the specific *types* of "procurement contract[s] for the supply of a product" to which the restriction should apply. Indeed, the broad scope of the language used in § 637(a)(17) is even clearer when it is compared with the terms used in another federal procurement statute, the Service Contract Act of 1965 (the Service Contract Act), 41 U.S.C. §§ 351-58 (2000). That statute applies to "every contract . . . *the principal purpose of which* is to furnish services . . . ." *Id.* § 351 (emphasis added). Its counterpart, the Walsh-Healy Public Contracts Act, 41 U.S.C. § 35 *et seq.* (2000), applies to contracts for which the principal purpose is not the furnishing of services, but instead, "the manufacture or furnishing of materials, supplies, articles, or equipment . . . ." *Id.* § 35. As the language of the Service Contract Act makes clear, Congress can, and does, sometimes include in its language limiting terms which carefully define a statute's scope. *See and compare Murakami*, 398 F.3d at 1352 (stating that if Congress intended a statute to be more narrow

---

[7] The cascading tier system allows the government to first receive bids from smaller business concerns meeting certain specific criteria while still reserving the right to open the bidding to full and open competition in the future. For example, in *Rotech*, RFP 583 was issued under a three tier cascade structure "all business concerns both large and small are able to submit bids at the onset. If at least two responsible bids from HUBZone small businesses are received, the government retains the right to convert the RFP into a total HUBZone set aside. If that is not met, the second tier looks for at least two responsible bids from general small business concerns with the ability to convert the RFP into a small business set-aside. Finally, if no such bids are received, the RFP is offered on the basis of full and open competition." *Rotech*, 71 Fed. Cl. at 355. This structure is different from the instant Solicitation, which was initially offered as a full small business set-aside, precluding the Plaintiff's ability to submit a bid.

than its plain language suggested, it "could have used stricter language in
crafting the Act") (citing *Doyon, Ltd. v. United States*, 214 F.3d 1309, 1316
(Fed. Cir. 2000)). Congress' refusal to do so here is clear and unambiguous,
and must be respected.

*Rotech*, 71 Fed. Cl. at 420.  Succinctly put, "that language clearly and unambiguously provides
that the nonmanufacturer rule applies to all supply contracts, whether they implicate some level
of services or not.  No legislative intent sufficient to overcome that plain reading of the statute
exists here." *Id.* at 421.  The court then analyzed the contents of both RFPs to determine whether
they were for services or supplies and concluded that while each RFP included both supply and
service elements, "the value of the contracts is mostly, if not entirely, attributable to the portion
which calls for the supply of manufactured products." *Id.* at 430.  Thus, it was found that,
regardless of the assigned NAICS code, the contracts were for supplies and thus the NMR was
applicable. *Id.*

However, after the 2006 *Rotech* holding, in 2011, the Small Business Administration
("SBA") promulgated 13 C.F.R. § 121.406, addressing the problem of mixed service and supply
contracts.  In sum, the regulation states that the NMR does not apply to contracts that have been
assigned a service NAICS code (as in this case).  Indeed, the regulation states that if a contract
classified as a service contract has a supply component, the NMR does not apply to the supply
component.[8]  Thus, the Government argues that despite any holding in *Rotech* concerning the
applicability of the NMR to mixed contracts issued under NAICS service codes, the SBA's
subsequent promulgation of 13 C.F.R. § 121.406(b)(3) overrules such a holding.  Def.'s Mot. J.
Admin. R. at 35-36.  In opposition, Rotech believes that the new regulations promulgated by the
SBA are irrelevant because the *Rotech* court has already concluded the statutory language of the
NMR is plain and unambiguous in its meaning.  Pl.'s Mot. J. Admin. R. at 16.  The Court is in
agreement with Rotech on this issue.  Since the Court of Federal Claims has already held that it
is a plain and unambiguous statutory requirement that the NMR be applied to all contracts
involving the provision of supplies, regardless of the NAICS code, this Court is not required to
defer to subsequent agency regulation that is contrary to the statute.

In *Chevron, U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984), the United States Supreme Court
held that "ambiguities in statutes within an agency's jurisdiction to administer are delegations of
authority to the agency to fill the statutory gap in reasonable fashion." *Nat'l Cable &
Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (citing *Chevron*, 467
U.S. at 865-866).  This delegation of authority is commonly referred to as *Chevron* deference,
referring to the deference that courts should pay to an agency's determination in resolving
ambiguities in a statute.  However, as the Supreme Court later noted in *Brand X Internet*, "A
court's prior judicial construction of a statute trumps an agency construction otherwise entitled to
*Chevron* deference only if the prior court decision holds that its construction follows from the
unambiguous terms of the statute and thus leaves no room for agency discretion.  This principle

---

[8] "The nonmanufacturer rule applies only to procurements that have been assigned a manufacturing or supply
NAICS code. The nonmanufacturer rule does not apply to contracts that have been assigned a service, construction,
or specialty trade construction NAICS code." 13 C.F.R. § 121.406(b)(3).  "If a requirement is classified as a service
contract, but also has a supply component, the nonmanufacturer rule does not apply to the supply component of the
requirement." 13 C.F.R. § 121.406(b)(4).

follows from *Chevron* itself." *Brand X Internet*, 545 U.S. at 982. Thus, in order for a prior judicial opinion to trump a regulation promulgated by an agency regarding statutory construction, that judicial opinion must have held that the language of the statute was unambiguous. Such is the case here.

Nevertheless, to further bolster this point, Judge Bush examined the history of the statutory NMR, noting that "nothing in the legislative history of the Small Business Act indicates that Congress intended to create an exception to the nonmanufacturer rule like the one suggested by the government. In fact, the unique history of the rule, in its statutory and regulatory forms, indicates just the opposite." *Rotech*, 71 Fed. Cl. at 420. As the court notes, at the time the statutory NMR was passed by Congress, its regulatory counterpart had existed for a number of years and had been interpreted by SBA-OHA decisions to apply only to contracts solely for the supply of manufactured goods. *Id.* at 421. By enacting the statutory NMR with language indicating that it should apply to *any* contract for supplies, Congress clearly evinced its intent to have the statute apply to all contracts involving the procurement of supplies and not just those contracts for supplies alone.

As the *Rotech* opinion clearly states, Judge Bush found the statutory NMR to be unambiguous in its application to contracts for the procurement of *any* supplies. Following the *Brand X Internet* standard set out by the Supreme Court, *Rotech* found that the unambiguous terms of the statutory NMR left no room for agency discretion on the matter. Thus, it is irrelevant to the controversy at hand that in 2011, five years after the *Rotech* decision, the SBA promulgated 13 C.F.R. § 121.406 in an attempt to narrow the scope of the statutory NMR. By its unambiguous language and clear use of the word "any" instead of more narrow language, Congress left no room for the SBA to change the scope of the statutory NMR.

### b. The Solicitation is for a contract that includes supplies.

Because the statutory NMR applies, unambiguously, to all supply contracts, the next step of the Court's inquiry is to determine whether the instant Solicitation is for a contract that includes supplies, in spite of its assigned NAICS service code. In *Rotech*, the court stated the standard thusly:

> [T]he court rejects the contention that the NAICS codes chosen for these procurements are dispositive of whether they are ones for supplies or services. The code chosen by an agency's contracting officer is certainly one item of evidence which may be examined by the court in determining the nature of a particular procurement, and thus, whether it is subject to the nonmanufacturer rule. There is no support, however, for the contention that the label assigned to a procurement in fact determines the nature of the contract to be awarded thereunder.

71 Fed. Cl. at 429-430. In that case, as in the case before this Court, the court was presented with a solicitation for home oxygen supplies and services issued under NAICS code 532291. After examining the two RFP's and comparing the value of the services and supplies required, the court concluded that the majority of the value of the contract was driven by the supply

component, and thus the RFPs offered contracts for supplies, placing them squarely within the ambit of the statutory nonmanufacturer rule. *Id.* at 430. Thus, not only did the contract *include* supplies but the supply component also predominated.[9]

Although the RFPs at issue in *Rotech* are not identical to the instant Solicitation, the Court finds them to be sufficiently similar such that the instant Solicitation can fairly be considered a contract for supplies. In *Rotech*, the court noted that "the majority of the line items listed in RFPs 583 and 247 are for manufactured products to be provided to VA patients. Only a handful relate to the provision of services. And, while it may be true that some costs are associated with the provision of those services, but simply are not billed separately, there is no evidence on this record to establish the relative size of those costs, or to show that they are anything more than 'incidental.'" *Rotech*, 71 Fed. Cl. at 428.

Specifically, of the fifteen line items listed in RFP 583, fourteen identified manufactured goods. In the instant VISN 19 solicitation, the base year for the Fort Harrison VA Medical Center contains 23 line items, 14 of which are fairly described as calling for the procurement of supplies.[10] Pl.'s Mot. J. Admin. R. at 6-7. While the supply-to-service line item ratio of the instant VISN 19 solicitation may not be as overwhelming at first glance as that of RFP 583, an examination of the line items show that, as in *Rotech*, the majority of the value of the contract will be derived from the supply of manufactured goods. Among the many service line items are:

- CLIN 0001 (Rental of Concentrator System, to have an estimated monthly quantity of 2100)
- CLIN 0006 (Rental of Portable Gaseous System, to have an estimated monthly quantity of 1200)
- CLIN 0019 (Portable Gaseous Contents, to have an estimated monthly quantity of 7800)
- CLIN 0020 (Portable Liquid Contents, to have an estimated monthly quantity of 6600).

AR at 422-425.

Conversely, the nine line items identified as services (CLINs 0001A, 0005A, 0010A, 0011A, 0013, 0014, 0015, 0016, and 0017) have a combined estimated monthly quantity of 223, with several line items having an estimated quantity of 0. *Id.* Looking at the comparison between supplies and services, it is fair to say that the majority of the value of the VISN 19 Solicitation is derived from the supplies to be provided rather than the services. Although the Government tries to differentiate the structure of the solicitation in *Rotech* (14 of 15 CLINs for supplies) from the instant solicitation (14 of 23 CLINs for supplies), this structure is heavily

---

[9] The *Rotech* court's holding is that the NMR applies to "contracts for the supply of manufactured items which also require the provision of some services." 71 Fed. Cl. at 424. That court, nevertheless, went on to examine the relative sizes of the supply and service components of the contracts before it "[i]n an abundance of caution…[a]ssuming that contracts which call for a significant number of services are exempt from the non-manufacturer rule," *id.*, although, logically this was not necessary.

[10] The entire VISN 19 solicitation requires servicing six separate areas, of which the Fort Harrison VA Medical Center is one. Each area has a schedule for the base year and four additional option years. Although the Court will only examine the schedule for one year in one area, a review of the Solicitation shows that the ratio of supply-to-service line items remains fairly consistent among option years and geographic areas. Thus, this year fairly illustrates the general nature of the contract such that this Court may draw its conclusions based on it.

influenced by the Government's decision to provide some patients with equipment already owned by the VA (CLINs 0014, 0015, 0016, and 0017).  In those instances, a contractor is simply required to deliver and set up equipment already owned by the VA rather than procure a brand new device.  However, looking at the actual numbers reveals that, for the base year in Fort Harrison, only 12 total devices owned by the VA will be provided for those four CLINs.

Even more telling is a comparison between CLIN 0001 and CLIN 0001A.  Line item 0001 is for the rental of new concentrator systems procured by the contractor along with the delivery, set-up, and maintenance of such devices and calls for an estimated monthly quantity of 2100.  Line item 0001A calls for the set-up and maintenance of VA owned concentrator systems in a monthly quantity of only 100.  Although the Court has not been provided with any evidence of total estimated costs for each of these line items, the large and obvious difference in supplies to services leads this Court to believe that the vast majority of the value for the VISN 19 solicitation is tied to supplies rather than services.  Thus, even though only 14 of the 23 CLINs call for supplies, the Court has no doubt that those 14 CLINs account for the large majority of the value of the contract compared to the 9 CLINs that call for a relatively small amount of services.  The Government contends that although the majority of the line items contain a supply element, Rotech overlooks the significant service component attached to them.  Def.'s Mot J. Admin. R. at 23.  The significance of the service component is, however, irrelevant to the application of the NMR under the holding in *Rotech* as long as there is a supply component.

The Government's argument that the VISN 19 solicitation is one for services rather than supplies because unlike the RFPs in *Rotech*, the instant solicitation calls for the contractor to rent out the home oxygen equipment rather than sell it to the VA is on firmer ground because a contract without a supply component would not fall under the NMR.  Def.'s Mot. J. Admin. R. at 29 ("The principal purpose of this solicitation is not to obtain manufactured oxygen tanks because the government is not taking ownership of a manufactured product. The tanks belong to the offeror, not the Government. Instead, the solicitation involves the rental of such items and the services required to operate them.")  However, as Rotech correctly notes, "the NAICS rules make no distinctions regarding whether rental versus ownership determines the applicable NAICS code or even the principle purpose" and that "the NMR applies to 'any procurement contract for the supply of a product . . . .'"  Pl.'s Reply at 24.  This position is sensible, because regardless of whether the VA is taking ownership of a product, home oxygen systems are still being provided to VA recipients, and a contractor must still find a way to acquire the necessary supplies in order to provide them.  As Rotech correctly notes, multiple CLINs in the *Rotech* contract called for the provision of rented equipment and those were treated identically to CLINs calling for the purchase of new supplies.  Pl.'s Mot. J. Admin. R. at 18.  The entire purpose of the NMR is to ensure that when a small business contractor needs to acquire supplies it does not itself produce, it gets them from another small business concern.  Whether renting the supplies or selling them, the small business contractor must still acquire them from another entity, and the NMR governs that transaction.

### c.   The NAICS code of Rotech's current contract is not dispositive.

The Government is at pains to prove that the proper NAICS code was used in order to have the Court conclude that the contracts were service contracts.  However, as this Court has

already stated (in agreement with the *Rotech* court), the NAICS code does not determine whether a contract is one for supplies or for services for purposes of the application of the NMR, although it is certainly relevant evidence.

For example, the Government argues that since this court decided *Rotech*, the SBA-OHA and the GAO have issued several decisions regarding the selection of NAICS codes which help distinguish *Rotech* and explain why it is inapplicable to the instant case. Def.'s Mot. J. Admin. R. at 17-22. Furthermore, the Government contends that the proper NAICS code was used because Rotech, the incumbent contractor for VISN 19 since 2003, was awarded the VISN 19 contract, among many other contracts, under NAICS code 532291. Def.'s Mot. J. Admin R. at 27. The Government argues that it "stands to reason Rotech believes that the contract they have been performing for the last 6 years was properly constituted under the correct NAICS code" and that "[t]he only difference is that the current procurement is a small business set aside whereas the previous contract was unrestricted." *Id.*

Although the issue of the proper NAICS code does not affect the Court's decision regarding the application of the NMR, suffice it to say that code 532291 (Home Health Equipment Rental) seems more in line with the contracts in the solicitation than Rotech's proffer, which is code 339112 (Surgical and Medical Instrument Manufacturing). Thus, the Court is not persuaded by Rotech's fourth count that the VA used the wrong NAICS code. That said, the NAICS code is non-determinative as to whether a contract truly is one for supplies or services – that question must be answered by looking to the terms of the contract.

### d. The issues raised in counts 1 and 3 are moot based on the Court's finding that the NMR governs.

Regarding the issues raised in Count 1 (concerning various LOS rules) and Count 3 (concerning 48 C.F.R. § 19.502-2(b)(1)) the Court finds that those issues are presently moot. The VA acted in a manner that was contrary to law when it issued the VISN 19 solicitation without including the requirements of the NMR. Because the Solicitation fails for that reason, it is unnecessary for the Court to go into other potential shortcomings at this juncture.

### e. Relief

Having decided that the Solicitation in this case is contrary to law, the Court now considers whether injunctive relief is warranted. To determine the propriety of granting injunctive relief, the Court must weigh the Plaintiff's irreparable harm if the court withholds such relief, the balance of hardships to the respective parties, and the public interest in granting injunctive relief. *Centech,* 554 F.3d at 1037; *see also PGBA, LLC v. United States,* 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

Although the Government argues that injunctive relief is only available in extraordinary circumstances and the current situation does not rise to that level, the Government cannot overcome the precedent in this court on that factor. Indeed, it has consistently been found that loss of opportunity can constitute irreparable harm. *See PGBA, LLC v. United States*, 57 Fed. Cl. 655, 664 (finding that a plaintiff who was denied the ability to bid suffered irreparable harm

because it "could result in a competitive disadvantage that might not be remedied, causing a contractor to lose an important business opportunity."), *see also Untied Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312, 323 (1998) ("The opportunity to compete for a contract and secure any resulting profit has been recognized to constitute significant harm."). Additionally, the balance of hardships weighs in favor of Rotech because the Government has violated the NMR.  As shown above, this violation has caused Rotech irreparable harm. Conversely, the VA suffers very little in reissuing a solicitation that conforms to all applicable law because it is in the interests of the VA to determine who can offer the best value on the solicitation while still conforming to all applicable federal law.  Additionally, there is an interest in having the applicable Federal laws followed when bids are solicited.  As this court has noted, "the public has a strong interest in insuring that public officials treat contractors fairly and generally obey procurement laws and regulations." *Transatlantic Lines LLC v. United States*, 68 Fed. Cl. 48, 57 (2005).  In this case, it has been determined that the instant VISN 19 solicitation violates the statutory NMR.  There is certainly a public interest in ensuring that all applicable laws are followed during the federal bidding process.  Thus, a permanent injunction is warranted in this situation.

## IV.    Conclusion

For all the reasons stated above, the Court finds that Solicitation No. VA259-14-R-0107 violates the statutory NMR and is contrary to the law.  Thus, the Court GRANTS Plaintiff's Motion for Judgment on the Administrative Record and the Court further GRANTS Plaintiff's request for a permanent injunction.  The VA is enjoined from moving forward with Solicitation No. VA259-14-R-0107.

The Clerk is directed to enter judgment accordingly.

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge